UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STACY LEBEOUF                                   CIVIL ACTION

VERSUS                                          NO: 12-2583

BAIN MANNING                                    SECTION: R(2)

## ORDER AND REASONS

Defendant Bain Manning moves for summary judgment on plaintiff Stacy LeBeouf's claims.[1]  LeBeouf opposes the motion and also moves to strike three witness statements made by her co-workers.[2]  For the following reasons, the Court grants in part and denies in part Manning's motion, and grants LeBeouf's motion.

## I. BACKGROUND

LeBeouf brought this suit against Manning in his individual and official capacities under 42 U.S.C. § 1983 and under Louisiana law for violations of her due process rights related to her resignation from her position as a nurse at Leonard J. Chabert Medical Center ("the Hospital").  She alleges that she had a property interest in her employment at the Hospital, and that Manning deprived her of that property interest without due process of law by constructively discharging her.  LeBeouf seeks a declaration that Manning violated her right to due process of law,

_____

[1]     R. Doc. 50.

[2]     R. Doc. 59.

and injunctive relief ordering Manning to reinstate her to her position. She also seeks damages for lost salary, lost benefits, compensatory damages, and punitive damages.

The facts surrounding LeBeouf's resignation from the Hospital are hotly disputed. Beginning in 1987, LeBeouf worked as a nurse at the Hospital. She was a State of Louisiana civil service employee.

**A. Manning's Summary Judgment Evidence**

In support of his motion for summary judgment, Manning presents the following facts. Shortly before October 25, 2011, Manning, the Human Resources Director for the Hospital, received reports of bizarre behavior and a possible medical error by LeBeouf. Manning testified to his receipt of this information before October 25th, and, in support, provides letters from three sources containing information he purportedly received before October 25th.[3] As a consequence of these reports, Rhonda Green, chief executive officer of the Hospital and LeBeouf's appointing authority, initiated an investigation into LeBeouf on October 25, 2011. Pending the investigation, Green suspended LeBeouf with pay for thirty days. The details of the suspension are memorialized in a letter, dated October 25, 2011 and signed by Rhonda Green, as follows:

---

[3] The letters were written only after LeBeouf's resignation, but Manning contends that the information conveyed in the letters was relayed to him before LeBeouf's resignation.

This will serve as written confirmation that I have placed you on suspension with pay, pending investigation, in accordance with Civil Service Rule 12.10. Your suspension will begin immediately, and it is to continue for 30 days or until further notice from me.

The reason for this suspension is that I have reason to believe that you have engaged in conduct which may warrant disciplinary action, and that your continued presence at work during an investigation of the suspected conduct would be contrary to the best interests of the state service.

During your suspension, you are not to enter this hospital or the hospital grounds, unless you are in need of medical treatment at this hospital. You will be informed, at the conclusion of the investigation, as to when you may return to work.[4]

Manning and Mary Blackburn, a nurse manager, met with LeBeouf at seven-thirty in the morning on October 25, 2011, to discuss the reports of bizarre behavior and the suspension. At his deposition, Manning stated that he and Blackburn inquired whether "there was anything that was causing any sort of bizarre or strange behavior."[5] Reportedly, Manning and Blackburn were "very concerned" about whether LeBeouf could perform her essential functions as a nurse.[6] Manning states that he presented LeBeouf the suspension letter signed by Rhonda Green at this meeting.[7] At this point, according to Manning, they told LeBeouf that she would

[4] R. Doc. 50, Ex. A-2 at 3.

[5] R. Doc. 50, Ex. A at 35 (deposition of Manning).

[6] *Id.* at 36.

[7] *Id.* at 47.

be suspended with pay pending the investigation due to the bizarre behavior, and that because it is the Hospital's "usual and customary procedure [] to give someone a drug test," that they "would like for [her] to submit to a drug screen."[8]  Manning reports that LeBeouf inquired why they were asking her to undergo a drug test, to which Manning responded: "I can't really go into the details now."[9]  Manning further explained that "in these sort of situations it is a condition of continued employment that any employee that is asked to submit to a drug screen, in order to return to work, must agree to taking the test by that condition."[10] According to Manning, LeBeouf stated that she would not take the drug test.[11]  Manning states that LeBeouf initially told him that she could not take the drug test because she was around people smoking marijuana on her recent vacation, but that LeBeouf later admitted to smoking marijuana herself.[12]  Manning also states that LeBeouf stated "under her breath, very lightly . . . 'That's not the only thing you're going to find.'"[13]

According to Manning, he presented LeBeouf with three options:

---

[8]      *Id.* at 49.

[9]      *Id.* at 50.

[10]     *Id.*

[11]     *Id.* at 52.

[12]     *Id.* at 54.

[13]     *Id.* at 55.

(1) submit to the drug test and serve a thirty-day suspension with pay pending its results, (2) refuse the drug test and be terminated immediately, or (3) refuse the drug test and resign in lieu of termination.[14] At his deposition, Manning explained that the choice had to be made immediately because if LeBeouf chose to submit to the drug test, it had to be conducted immediately.[15] Otherwise, there was a potential for any drugs to "get out of her system."[16]

At this point, LeBeouf reportedly inquired as to what would happen if she tested positive for drugs.[17] In response, Manning detailed his understanding of the Recovery Nurse Program, run by the Louisiana Board of Nursing, which would require a nurse who tested positive for drugs to submit to an evaluation. Specifically, Manning stated that "they usually put together some observational phase," which, for example, could include "three days" of observation by a "mental health professional," after which "they put together a treatment plan as per the recovery program and proceed from there."[18] At his deposition, Manning emphasized that he is not aware of any required inpatient program to which nurses

---

[14]    *Id*. at 52-54.

[15]    *Id*. at 60.

[16]    *Id*.

[17]    *Id*. at 52.

[18]    *Id*. at 53.

who test positive for drugs must submit.[19]   Further, Manning states

that he mentioned no such possibility to LeBeouf.[20]

After this discussion, LeBeouf reportedly stated that she

wanted to resign.[21]   Manning stated that when an employee refuses

to take a drug test, the Hospital requires her to sign a form

confirming the refusal.[22]   Likewise, if an employee agrees to submit

to a drug test, the Hospital requires her to sign a consent form.[23]

In this instance, Manning states that LeBeouf declined to even sign

the refusal form.[24]   LeBeouf did, however, complete a handwritten

resignation letter, which stated: "I, Stacy LeBeouf, hereby resign

effective immediately."[25]

Shortly after the meeting with LeBeouf, Manning completed a

report detailing the contents of the meeting, which stated:

> Stacy Lebeouf was questioned at 7:30 am this morning by
> Mary K. Blackburn, RN Manager, and this writer[, Bain
> Manning].   She has recently been observed exhibiting
> unusual behavior enough for concern about herself and of
> the patients she cares for.   During the discussion, Ms.
> Lebeouf was asked to submit a urine sample for drug
> screening. Ms. Lebeouf, in response to the request,

---

[19]   *Id.* at 62.

[20]   *Id.* at 63.

[21]   *Id.* at 59.

[22]   *Id.* at 95.

[23]   *Id.*

[24]   *Id.*

[25]   R. Doc. 50, Ex. E.

openly admitted without duress that she had used
marijuana during her recent vacation. She also mentioned
on two occasions very passively and in a low volume that
"other things may show up" in the context of the drug
screen.

After an extensive discussion about her employment
options in coordination with the requested drug
screening, Ms. Lebeouf resigned her position at LJCMC
effective immediately.[26]

On October 28, 2011, LeBeouf completed a "Separation
Questionnaire," in which she listed the following reasons for her
departure: "Personal Reasons;" "Retirement;" and "Work Load."[27] She
also detailed stresses related to caring for patients.[28]

**B. LeBeouf's Summary Judgment Evidence**

In contrast, LeBeouf has submitted a declaration which
provides a very different set of facts.[29] There, LeBeouf provides
the following account:

On October 25, 2011, I was directed by my supervisor
Jenny Domangue to meet with Bain Manning, Human Resources
Director, and Mary Kay Blackburn, acting Chief Nursing
Officer. Upon arriving at the office, Manning informed
me that I was being suspended with pay for thirty (30)
days and must immediately submit to a drug screen and a
three (3) day involuntary inpatient psychiatric
hospitalization. Manning told me that hospital security
guards would be arriving in a few minutes to escort me to
a clinic for a drug screen and that my car and personal
belongings would remain at the hospital until
arrangements could be made to have them collected.

---

[26]   R. Doc. 50, Ex. A-2 at 2.

[27]   R. Doc. 50, Ex. F.

[28]   *Id.*

[29]   R. Doc. 63, Ex. 1.

7

Bain Manning refused to provide me with any reasons for the suspension or involuntary inpatient psychiatric hospitalization, despite my repeated requests for that information.  I agreed to submit to a drug screen, but not to an involuntary inpatient psychiatric hospitalization.  Manning informed me that if I disagreed with the suspension and refused involuntary inpatient psychiatric hospitalization, I would be terminated. Manning told me that I could also resign.  I resigned only because of the limited choices that Bain Manning informed me that were available.[30]

In addition, LeBeouf raises several disagreements she has with Manning's deposition testimony.  Pertinently, LeBeouf denies that she admitted to using marijuana or any illegal drugs during her vacation before the October 25, 2011 meeting.[31]  She claims that she "tried marijuana in high school," but that she has not smoked marijuana since then.[32]  Similarly she states that she has never used any "other illegal drugs," and denies that she said her drug screen would show drug use.[33]  She further denies that Manning or Ms. Blackburn talked to her about complaints of alleged "bizarre behavior" or asked her if there was an emotional or medical cause for the alleged "bizarre behavior."[34]  She also denies that Manning gave her the suspension letter from Rhonda Green at the October 25,

---

[30]     *Id.* at 1-2.

[31]     *Id.* at 3.

[32]     *Id.*

[33]     *Id.*

[34]     *Id.*

8

2011 meeting.[35]   According to LeBeouf, she did not see the
suspension letter until she reviewed Manning's March 19, 2015
deposition exhibits.[36]

LeBeouf also states that neither Manning nor Ms. Blackburn
told her that if the drug screen was negative, she could return to
work.  She denies that she refused to take a drug test on October
25, 2011, and claims that she signed a document agreeing to the
drug screen after entering the office that morning.[37]  She also
denies that Manning or Ms. Blackburn talked to her on October 25,
2011 about the Louisiana State Board of Nursing or the Recovering
Nurse Program.[38]  Finally, LeBeouf states that she asked Manning
several times why a three-day inpatient psychiatric evaluation was
necessary, but that he told her he was not at liberty to discuss
that with her.[39]

## II. MOTION TO STRIKE

Initially, the Court examines LeBeouf's motion to strike
portions of Manning's summary judgment evidence.

---

[35]      *Id.*

[36]      *Id.*

[37]      *Id.*

[38]      *Id.*

[39]      *Id.*

Manning attaches three written statements[40] made by LeBeouf's co-workers within days after her resignation from the Hospital. The statements detail reports of bizarre behavior and an instance of medical error by LeBeouf.  Manning contends that while the letters were written after LeBeouf's resignation, they reflect information reported to him before LeBeouf's resignation.  LeBeouf contends that the statements consist of inadmissible hearsay and that they are not admissible under the business records exception because they were not drafted in the regular course of business activity.  Rather, LeBeouf contends they were drafted for the purpose of establishing some fact at trial.  Manning responds that the statements were drafted in the regular course of business activity, and that even if the business records exception does not apply, the statements are admissible as nonhearsay to show the basis for the Hospital's investigation into LeBeouf's behavior.

Federal Rule of Evidence 803(6) provides an exception to the hearsay rule in which a business record is admissible if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> (C) making the record was a regular practice of that activity;

> (D) all these conditions are shown by the testimony of

---

[40]    R. Doc. 50, Ex. B.

the custodian or another qualified witness, or by a
certification that complies with Rule 902(11) or (12) or
with a statute permitting certification; and

(E) the opponent does not show that the source of
information or the method or circumstances of preparation
indicate a lack of trustworthiness.

Manning supplies a certification in which he states that these
written statements "are true copies of documents that are records
which were regularly kept in the course of business."[41]   This
certification is insufficient to satisfy the requirements set forth
in Federal Rule of Evidence 803(6).   Specifically, while Manning
certifies that the records were regularly kept in the course of
business, there is no evidence indicating that making the records
was a regular practice.   These records are therefore not admissible
under the business records exception.

Moreover, the statements are not admissible as nonhearsay to
show the basis for the Hospital's initiation of the investigation
into LeBeouf.   LeBeouf's co-workers prepared these statements only
after LeBeouf's resignation.   The statements themselves do not
reflect whether the co-workers reported the information contained
in the statements to the Hospital before LeBeouf's resignation or
the reason the co-workers prepared the statements.   Instead, the
statements only anecdotally describe the co-workers' observations
of LeBeouf's behavior before her resignation.   While Manning may
elicit testimony at trial from the co-workers about statements that

---

[41]     R. Doc. 50, Ex. H.

were made to him or of which he became aware before LeBeouf's resignation, the connection between these after-the-fact written statements and the Hospital's basis for investigating LeBeouf is missing at this time.  Accordingly, LeBeouf's motion is granted, and the Court will not consider these documents in deciding Manning's motion for summary judgment.  Manning may, however, attempt to establish a proper foundation for these records at trial.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  The Court must draw all reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or

12

defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id.* at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates*

13

the entry of summary judgment, after adequate time for discovery
and upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

**B. Analysis**

LeBeouf contends that Manning violated her right to
predeprivation and postdeprivation procedural due process by
constructively discharging her without predeprivation notice,
hearing, or a meaningful opportunity to respond, and by failing to
provide her with a postdeprivation hearing before the Louisiana
Civil Service Commission.

Manning advances eight arguments in favor of his motion for
summary judgment: (1) LeBeouf never attained any rights to
predeprivation due process because she resigned; (2) LeBeouf's
claims are precluded by her failure to utilize available state
remedies; (3) Manning did not proximately cause LeBeouf's alleged
damages; (4) LeBeouf's claim is barred by the *Parratt/Hudson*
doctrine; (5) Manning is entitled to qualified immunity; (6)
LeBeouf's claims are barred by state sovereign immunity; (7) this
Court lacks jurisdiction to hear any state-law claims subject to
the Louisiana Civil Service Commission's exclusive jurisdiction;
and (8) LeBeouf's state-law claims are barred by principles of res
judicata and collateral estoppel.

14

### 1. Predeprivation Due Process

Initially, Manning contends that LeBeouf was not entitled to predeprivation due process because she resigned.

To sustain a claim for deprivation of procedural due process, a plaintiff must show (1) that she has a property interest in her employment sufficient to entitle her to due process protection, and (2) she was deprived of her right to such opportunity to be heard at a meaningful time. *See McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155-56 (5th Cir. 1996).

The parties do not dispute that LeBeouf had a property interest in her employment with the Hospital. *See Wallace v. Shreve Mem'l Library*, 97 F.3d 746, 748 (5th Cir. 1996) ("In Louisiana, a permanent classified civil service employee has a protected property interest in her job."). It is well settled that "'some type of hearing' is ordinarily a constitutional requirement for due process purposes before a public employee who has a property interest in [her] job may be terminated." *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 980 (5th Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). As the Supreme Court has explained:

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require

more than this prior to termination would intrude an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. at 546 (citations omitted). Additionally, a public employee dismissible only for cause is entitled to a "comprehensive post-termination hearing." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). If Manning terminated LeBeouf, the Hospital's failure to provide her with predeprivation procedures "unquestionably violated her constitutional rights." *Fowler*, 799 F.2d at 980. But Manning did not fire LeBeouf; she resigned. Consequently, LeBeouf contends that she was constructively discharged.

"To show constructive discharge, an employee must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003) (citing *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)). Further, "[c]onstructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures." *Fowler*, 799 F.2d at 981; *see also Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005).

In several instances, the Fifth Circuit has held that a constructively discharged employee should have been afforded predeprivation due process procedures. *See Rathjen v. Litchfield*,

16

878 F.2d 836, 838 (5th Cir. 1989) ("[A] due process violation exists where an employee is constructively discharged by actions of the employer intended to force the employee to sacrifice his due process protection by voluntarily resigning."). The need for predeprivation procedures is inherent in situations when constructive discharge arises "from the employee's finding himself between the Scylla of voluntary resignation and the Charybdis of forced termination." *Fowler*, 799 F.2d at 981. In other words, when "an employee confronts an either/or termination proposition, and it can be said that the state agency's motive is to avoid the pretermination remedy required in *Loudermill*." *Fowler*, 799 F.2d at 981. For example, in *Findeisen v. North East Indep. School Dist.*, 749 F.2d 234 (5th Cir. 1984), the Fifth Circuit held that a tenured teacher's "alleged constructive discharge claim set[] forth the type of deprivation for which due process requires a predeprivation hearing" when the teacher alleged that he resigned under threat that he would be fired and as a means for the school district to avoid hearing procedures required for civil service employees. *Id.* at 239. *See also Bueno v. City of Donna*, 714 F.2d 484 (5th Cir. 1983) (employees forced to resign in order to avoid involuntary discharge).

Here, the Fifth Circuit, examining the allegations in LeBeouf's second amended complaint, which are now supported with

17

facts set forth in LeBeouf's declaration,[42] has already held that LeBeouf presents a cognizable claim for constructive discharge. *LeBeouf*, 575 F. App'x at 377-78.  Specifically, the Fifth Circuit relied on LeBeouf's allegations that Manning told her she could not collect her property or vehicle and would be immediately escorted to the drug test and psychiatric evaluation, and that he provided no explanation as to why she would be committed or why it was necessary.  Further, the Fifth Circuit relied on Manning's position as a Human Resources Director at the Hopsital, which would have made him aware of LeBeouf's right to predeprivation due process if she did not voluntarily resign, and Manning's refusal to allow LeBeouf more time to consider her options or to speak to someone else.  Taken together, the Fifth Circuit found that these facts could support a claim that Manning constructively discharged LeBeouf in order to avoid predeprivation procedures.  Accordingly, genuine issues of material fact exist on whether Manning constructively discharged LeBeouf.

The next question is whether LeBeouf has presented genuine issues of material fact on whether Manning denied her predeprivation due process.  Here, LeBeouf has stated that "Manning refused to provide [her] with any reasons for the suspension or involuntary inpatient psychiatric hospitalization," and that if she disagreed with the suspension and refused involuntary inpatient

---

[42]    R. Doc. 63, Ex. 1.

psychiatric hospitalization, she would be terminated or could resign.[43]  These statements create an issue of fact as to whether Manning afforded LeBeouf adequate notice, explanation of the evidence, or an opportunity to present her side of the story.  From LeBeouf's account, it appears that Manning informed her only of her disciplinary options and not the charges that provided the basis for them.  Moreover, according to LeBeouf, Manning refused to provide any explanation of the evidence whatsoever.  Finally, according to LeBeouf, she was not permitted to present her side of the story, but rather was given a choice between three disciplinary options.  Accordingly, LeBeouf has presented issues of material fact on whether Manning denied her predeprivation due process.

For these reasons, Manning's motion is denied to the extent it contends LeBeouf was not entitled to due process.

### 2. Failure to Exhaust Available State Procedural Remedies

Manning next contends that LeBeouf's failure to file a timely appeal with the Louisiana Civil Service Commission--a postdeprivation remedy--precludes her claim because it constitutes a failure to utilize available procedures.  *See Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir. 1987) (holding that a plaintiff "cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy").

---

[43]     *Id.* at 2.

Louisiana Civil Service Rule 12.8 provides, *inter alia*, that when "an appointing authority decides to discipline or remove a permanent employee," he or she must provide written notice, including a statement that the employee may appeal the action to the State Civil Service Commission within thirty days. In conjunction with this rule, Civil Service Rule 13.12 specifies that an appeal must be filed within thirty days of receiving this notice, or, in cases where notice is not required, within thirty days of when the employee learned or was aware of the action complained of.

Under Louisiana law,

> [w]hen . . . an employee voluntarily resigns, the employee has no right to appeal. On the other hand, when . . . it is alleged that an employee involuntarily resigned, the employee has a right to appeal. The reason an employee who involuntarily resigns has a right to appeal is 'to preclude the characterization of disciplinary action as a 'resignation' to subvert an employee's right to appeal provided for by La. Const. Art 10, § 8.

*Foucha v. Dept. of Police*, 947 So. 2d 805, 808-09 (La. Ct. App. 4 Cir. 2006) (citations omitted).

When, as here, an employee contends she involuntarily resigned, Louisiana courts require the employee to file an appeal within thirty days of when the action complained of occurred. Employees that involuntarily resign are not entitled to notice of their appeal rights. For example, in *Pugh v. Dep't of Culture, Recreation and Tourism, Sabine River Auth.*, 597 So. 2d 38 (La. Ct.

App. 1 Cir. 1992), the plaintiff filed an untimely appeal to the Civil Service Commission. The plaintiff contended that her employer was required to furnish written reasons for her removal and notice of her appeal rights because "her resignation was not voluntary, but coerced, and thus, that she was 'removed' from her position." *Id.* at 40. Because the plaintiff resigned in lieu of disciplinary action, the court held that her failure to file her appeal within thirty days of her resignation, as required by Rule 13.12(a), precluded her claim even though she never received notice of her appeal rights. *Id.* at 42. This court also rejected the plaintiff's argument that Rule 13.12(a)(2)'s thirty-day clock did not begin to run until she was aware of her right to appeal. Likewise, in *Reich v. Dep't of Health & Hosps. Office of Citizens with Developmental Disabilities*, No. 2009 CA 1248, 2010 WL 502970, at *3 (La. Ct. App. 1 Cir. Feb. 12, 2010), the state appellate court affirmed the Civil Service Commission's dismissal of the plaintiff's claim as untimely when the plaintiff alleged he involuntarily resigned and failed to file an appeal within thirty days even though he received no notice of his appeal rights.

Here, LeBeouf resigned on October 25, 2011, and completed a written resignation form on October 28, 2011. On April 19, 2012, LeBeouf filed an appeal, postmarked April 18, 2012, challenging the voluntariness of her termination.[44] She requested reinstatement and

---

[44]    R. Doc. 50, Ex. G at 1.

backpay.[45]   On June 29, 2012, the Civil Service Commission Referee issued a notice to LeBeouf questioning the timeliness of her appeal, and gave her fifteen calendar days to amend her appeal and/or show cause in writing why it should not be summarily dismissed.[46]   On July 20, 2012, LeBeouf responded, contending that her appeal was timely because she was not provided written notice of appeal rights.[47]   The referee recalled the June 29, 2012 notice on August 8, 2012.[48]   The Hospital filed a Motion for Summary Disposition regarding the timeliness of the appeal on September 25, 2012.   The Referee issued a second notice to LeBeouf on October 2, 2012, questioning the timeliness of her appeal.   LeBeouf did not respond to that notice.   On December 11, 2012, the Referee dismissed LeBeouf's appeal as untimely.   The Referee noted that Rule 12.8 requires notice of appeal rights, but that the rule is applicable only to disciplinary actions and removals; it does not apply to resignations.

In the Fifth Circuit, the general rule is that "no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him." *Rathjen*, 878 F.2d at 839-40; *see also Myrick*, 810 F.2d at 1388 (holding that a plaintiff

---

[45]   *Id.*

[46]   *Id.*

[47]   *Id.*

[48]   *Id.*

"cannot skip an available state remedy and then argue that the deprivation by the state was the inadequacy or lack of the skipped remedy"); *Galloway v. Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1987) (holding that "an employee cannot ignore the process duly extended to him and later complain that he was not accorded due process"). Thus, a plaintiff cannot bring a predeprivation procedural due process claim when "the state afforded him a constitutionally sufficient pretermination hearing yet he declined to participate in it;" nor can a plaintiff "challenge the procedures at a post-termination hearing when the state provided ample procedures in another post-termination setting, such as an administrative or judicial appeal." *Washington v. Burley*, 930 F. Supp. 2d at 790, 801 (S.D. Tex. 2013). But, as the Fifth Circuit has held, a plaintiff's "failure to exhaust his postdeprivation state remedies does not foreclose his claim of lack of predeprivation process." *Chiles v. Morgan*, 53 F.3d 1281, 1995 WL 295931, at *1-2 (5th Cir. 1995) ("A dismissed employee cannot dispute the adequacy of postdeprivation remedies if he fails to utilize them. [Plaintiff's] procedural due process claim, however, is based on lack of predeprivation process. His failure to exhaust his postdeprivation remedies does not affect his entitlement to predeprivation process." (citations omitted)).

Initially, the Court notes that Manning conflates LeBeouf's alleged failure to utilize available postdeprivation procedures

23

with her alleged failure to utilize available predeprivation procedures. As noted, a plaintiff's "failure to exhaust postdeprivation state remedies does not foreclose his claim of lack of predeprivation process." *Chiles*, 53 F.3d at *1-2. Accordingly, to the extent Manning argues that LeBeouf's alleged failure to utilize postderpivation procedures precludes her claim for violation of her predeprivation due process rights, this argument fails.

Here, LeBeouf also claims a denial of postdeprivation rights. Whether LeBeouf failed to utilize available postdeprivation procedures is a different question. As noted, Louisiana requires employees challenging the voluntariness of their resignation to file an appeal within thirty days of when the action complained of occurred; such employees are not entitled to notice of appeal rights.[49] Had LeBeouf complied with this procedure, she would have received postdeprivation procedure in the form of an administrative hearing before the Louisiana Civil Service Commission. But here, LeBeouf undisputedly failed to file an appeal within the required thirty-day window. Instead, she waited nearly six months before filing an appeal. Consequently, no issue of fact exists precluding a finding that LeBeouf failed to utilize available postdeprivation

---

[49]     Indeed, LeBeouf has separately categorized *Pugh* as standing for the proposition that "state officials need not provide notice of appeal rights to classified employees who are claiming that their resignations were forced." R. Doc. 63 at 22.

24

state procedures.   Accordingly, she cannot now challenge the adequacy of the available postdeprivation procedures and any claims for violations of her postdeprivation due process rights must be dismissed.[50]   *See Felder v. Hobby*, 199 F.3d 439, at *7 (5th Cir. 1999) ("Fatal to her procedural due process claim was her failure to request a hearing.").

LeBeouf now alleges that Manning violated her right to due process by not notifying her of her appeal rights.   Initially, the Court notes that LeBeouf did not assert this theory in her pleadings, and the Court therefore need not consider it.   *See Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 289 F. App'x 22, 27 n.2 (5th Cir. 2000) ("We need not consider whether the evidence establishes such a claim, however, because it was raised for the first time in [plaintiff's] opposition to the defendants'

---

[50]     LeBeouf contends that she did not "waive" her postdeprivation rights to procedural due process.   In support, she cites, among other cases, *Bueno v. City of Donna*, 714 F.2d 484 (5th Cir. 1983), where the Fifth Circuit examined whether employees who alleged they were forced to resign waived due process protection by resigning.   But this case did not examine whether the employees failed to utilize available state remedies; rather, it stated only that an employee who admits resigning, but contends he or she was forced to resign, does not waive due process protection absent actual knowledge of the existence of the right, full understanding of its meaning, and clear comprehension of the consequence of the waiver.   *Id.* at 493.   It bears emphasis that the Court does not find that LeBeouf waived her due process protections by resigning, if in fact she was constructively discharged.   As in *Bueno*, the Court finds that LeBeouf's summary judgment evidence would entitle her to postdeprivation due process.   The Court's holding here is limited to a finding that LeBeouf failed to utilize available postdeprivation remedies.

motion . . . for summary judgment." (citing *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 368 (5th Cir. 2000))). Regardless, LeBeouf has not directly challenged the constitutionality of the Louisiana Civil Service Commission's postdeprivation procedure, which affords no notice of appeal rights to employees alleging their resignations were involuntary. *See Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) ("Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations."). Moreover, several courts addressing this issue have found no due process violation when a party is not afforded notice of appeal rights. *See Childress v. Small Business Admin.*, 825 F.2d 1550, 1553 (11th Cir. 1987) ("We know of no case, however, which holds that minimum due process requires that the parties not only be given a notice and hearing but also that they be specifically advised of their right to appeal."); *Vialez v. N.Y.C. Housing Auth.*, 783 F. Supp. 109, 117 (S.D.N.Y. 1991) ("Research reveals that, faced with the question, courts have uniformly found a plaintiff claiming a due process entitlement to specific notice of the right to appeal unable to demonstrate a legally sound argument."). Finally, the Louisiana Civil Service Commission's

appeal procedures are readily available to the public,[51] and the Supreme Court has held that "individualized notice of state law remedies, which . . . are established by published, generally available state statutes and case law" is not necessary to satisfy postdeprivation due process. *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999).[52]

### 3. *Parratt/Hudson Doctrine*

Despite the Fifth Circuit's explicit holding that "the *Parratt/Hudson* doctrine does not apply to LeBeouf's claim," *LeBeouf*, 575 F. App'x at 380, Manning re-urges the argument that the *Parratt/Hudson* doctrine precludes LeBeouf's claim.

Under the *Parratt/Hudson* doctrine, a "random, unauthorized" deprivation of property does not result in a procedural due process violation when the state provides an adequate post-deprivation proceeding. *Hudson v. Palmer*, 468 U.S. 517, 533 (1983). The doctrine is an exception to the rule that constitutionally required

---

[51]     *See* Louisiana Department of State Civil Service, Civil Service Rules, Chapter 13: Civil Service Appeals, *available at* http://www.civilservice.louisiana.gov/CSRules/Chapter13.aspx.

[52]     LeBeouf cites *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978), to support her contention that notice of her appeal rights is required in this case, but the Supreme Court in *Perkins* stated: "While *Memphis Light* demonstrates that notice of the procedures protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, it does not support a general rule that notice of remedies and procedures is required." *Perkins*, 525 U.S. at 242.

procedures must generally precede the deprivation of a protected interest.  The exception is justified because a state cannot reasonably be expected to "provide pre-deprivation process in situations where it cannot anticipate the need for such process," as is the case when "the actions complained about are random and unauthorized."  *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) (quoting *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996)).  The doctrine is applicable if "(1) the deprivation was unpredictable or unforeseeable; (2) predeprivation process would have been impossible or impotent to counter the state actors' particular conduct; and (3) the conduct was unauthorized in the sense that it was not within the officials' express or implied authority."  *Smith v. Epps*, 326 F. App'x 764, 765 (5th Cir. 2009).

Examining the facts alleged in LeBeouf's second amended complaint, now before the Court as summary judgment evidence, the Fifth Circuit held that "[h]ere, unlike in *Parratt* where it was impossible to predict when a prison official's negligence may result in an inmate being deprived of his property, it was predictable that LeBeouf would be deprived of her property interest when Manning informed her that if she would not submit to the psychiatric hospitalization she must resign or be terminated." *LeBeouf*, 575 F. App'x at 380.  The Fifth Circuit further held that "it was possible for LeBeouf to have received pre-deprivation process" because "Louisiana civil service law mandates that an

employee in LeBeouf's position receive a pre-termination hearing, and Manning had no evidence that LeBeouf was impaired or an immediate threat to herself or others." *Id.* Thus, Manning's argument fails.

Manning now asserts that the *Parratt/Hudson* doctrine bars LeBeouf's claim because two of its requirements are met: the deprivation was unpredictable or unforeseeable because, under LeBeouf's set of facts, Manning's actions constituted "a random, unauthorized personal vendetta against"[53] LeBeouf, and Manning's actions were unauthorized because he was not LeBeouf's appointing authority. Even if these contentions are true, Manning has not argued much less presented evidence suggesting that predeprivation process would have been "impossible or impotent." *Smith*, 326 F. App'x at 765. Manning has therefore failed to show that the *Parratt/Hudson* doctrine applies to LeBeouf's claim. Accordingly, the Court denies Manning's motion on this ground.

### 4. Causation

Manning also contends that he cannot be liable to LeBeouf because he did not cause her alleged damages. He contends that only LeBeouf's appointing authority, Rhonda Green, CEO of the Hospital, had the authority to discipline, hire, and fire classified civil service employees, under Civil Service Rules 1.4 and 12.1. Lacking this power, he contends that he did not cause

---

[53]    R. Doc. 50-2 at 9.

LeBeouf's discharge.  Manning further urges that because LeBeouf resigned, only she is responsible for her damages.  The Court has already rejected the latter argument because it ignores LeBeouf's allegations of constructive discharge.

Regardless, whether Manning had authority to officially terminate LeBeouf is of no consequence so long as he "was either personally involved in the deprivation or that [his] wrongful actions were causally connected to the deprivation." *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 240 (3d Cir. 2006) ("A supervisor who lacks the power to terminate a subordinate's employment may nonetheless abuse this power with respect to that subordinate, and may even constructively discharge the subordinate, provided he (the supervisor) exercises *some* power over the employee.").  Here, the record shows that Manning routinely held disciplinary and termination meetings with employees.[54]  LeBeouf has presented evidence suggesting that in this same role Manning constructively discharged her.  Accordingly, fact issues exist precluding Manning's summary judgment motion on the

---

[54]  Manning testified that he has conducted approximately 200 disciplinary acts, including both suspensions and investigations, over the course of a four-and-a-half-year period. R. Doc. 50, Ex. A at 39.  He also testified that he has terminated approximately 50 to 80 employees and has accepted at least 100 resignations in lieu of dismissal. *Id.* at 40.

issue of causation.

### 5. Qualified Immunity

Next, Manning asserts that he is entitled to qualified immunity on LeBeouf's claims against him in his individual capacity.[55] The defense of qualified immunity shields "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The inquiry involves a two-step process, "with the plaintiff bearing the burden of showing that the defendants are not entitled to immunity." *Jabary v. City of Allen*, 547 F. App'x 600, 609 (5th Cir. 2013) (citing *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013)). Initially, the plaintiff must show the "violation of a clearly established constitutional or statutory right." *Id.* (quoting *Wyatt*, 718 F.3d at 502). To be "clearly established" for the purposes of qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the plaintiff demonstrates a violation of a clearly established

---

[55] "[T]he personal defense of qualified immunity does not apply to official capacity claims." *Stallworth v. Slaughter*, 436 Fed. Appx. 337, 340 (5th Cir. 2011).

31

constitutional right, the Court next inquires as to "whether the defendant's conduct was objectively reasonable." *Wyatt*, 718 F.3d at 503.

Initially, the Court notes that Manning erroneously focuses on whether "presenting a public employee the options of submitting to an immediate drug test or face termination, or to resign"[56] violates a clearly established right.  LeBeouf alleges a constitutional violation arising out of her constructive discharge--occurring as a result of Manning's allegedly requiring her to submit to a three-day inpatient psychiatric evaluation.  The constitutional violation is not the constructive discharge itself, but rather Manning's failure to afford LeBeouf due process. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (instructing that "the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*").  The relevant question, therefore, is whether, assuming Manning constructively discharged LeBeouf, his failure to afford her due process violated a clearly established right.

The Supreme Court has recognized that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill*, 470 U.S. at

---

[56]     R. Doc. 50-2 at 18.

542.   "Predeprivation notice, when depriving someone of an important property interest, is 'the root requirement of the Due Process Clause.'" *Jabary*, 547 F. App'x at 610 (quoting *Loudermill*, 470 U.S. at 542).   As noted, the Fifth Circuit has recognized that constructively discharged employees are entitled to due process in circumstances similar to those alleged by LeBeouf.  *See Fowler*, 799 F.2d at 981 (plaintiff may make out a cognizable due process claim when she alleges that she found herself "between the Scylla of voluntary resignation and the Charybdis of forced termination"). Construing the record in the light most favorable to LeBeouf, the record gives rise to a genuine issue of material fact regarding whether LeBeouf was constructively discharged and whether Manning's actions were insufficient to satisfy due process because LeBeouf did not receive notice of the charges, an explanation of the evidence, or an opportunity to be heard.  LeBeouf has therefore presented sufficient evidence regarding a violation involving a clearly established right.

Likewise, the record presents a genuine issue of material fact regarding whether a reasonable state official would understand that discharging LeBeouf in the manner described by LeBeouf, without affording her any process, violated her due process rights and was objectively unreasonable.  *See Holden v. Knight*, 155 F. App'x 735, 740-41 (5th Cir. 2005) (officials "should have known that presenting [the employee] with an ultimatum would violate his right

33

to procedural due process"). Assuming, as LeBeouf states in her declaration, that Manning presented LeBeouf with the ultimatum of choosing between (1) suspension, a drug test, and an immediate inpatient psychiatric evaluation, and (2) termination or resignation, a reasonable official should have known failure to provide due process would violate LeBeouf's due process rights. Accordingly, because LeBeouf presents genuine issues of material fact on whether Manning is entitled to qualified immunity in his individual capacity, Manning's motion is denied on this ground.

### 6. State Sovereign Immunity

Manning next contends that LeBeouf's claims against Manning in his official capacity are barred by the Eleventh Amendment. He asserts that all LeBeouf's claims are barred without distinguishing between those based on violations of federal law seeking money damages or injunctive relief, or those based on violations of state law.

Sovereign immunity under the Eleventh Amendment bars a state's citizens from suing the state or its agencies in federal courts. *Cozzo v. Tangipahoa Parish Council-President, Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). Although LeBeouf has not sued the state of Louisiana in its own name, Eleventh Amendment immunity extends to Manning in this case. The Board of Supervisors of Louisiana State University, the juridical entity that owned and operated the Hospital, *see* La. R.S. § 17:1519.2 (A)(1) and (B)(1)(D), is an

34

agency of the State of Louisiana and has Eleventh Amendment immunity from suit against it in federal court. *See Pastorek v. Trail*, 248 F.3d 1140, at *2 (5th Cir. 2001). Further, state sovereign immunity extends to claims for money damages against state officers in their official capacities. *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004). Accordingly, LeBeouf's claims for money damages against Manning in his official capacity must be dismissed.

Likewise, the Eleventh Amendment bars litigants from raising claims in federal court against state officials on the basis of violations of state law when acting in the course and scope of their employment whether the litigant seeks damages or injunctive relief. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990). Accordingly, LeBeouf's state-law claims against Manning in his official capacity must be dismissed.

But claims for injunctive relief against a state official in his official capacity are not barred by state sovereign immunity. The doctrine of *Ex parte Young* serves as an exception to the rule that official capacity suits represent suits against the state. A state official sued in his official capacity for injunctive relief is a "person" under section 1983, "because 'official-capacity actions for injunctive relief are not treated as actions against the State.'" *Will v. Mich Dep't of State Police*, 491 U.S. 58, 71

35

n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 145-48 (1908).

To determine whether a plaintiff may maintain claims against a state official in his official capacity, a court need only inquire as to whether the plaintiff shows "an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted).  The Fifth Circuit has held that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law." *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008). Because LeBeouf has shown that genuine issues of fact exist as to whether Manning violated her right to due process, and she seeks injunctive relief in the form of reinstatement, her claim falls within the *Ex parte Young* exception and is not barred by the Eleventh Amendment.

Accordingly, Manning's motion is denied to the extent LeBeouf seeks injunctive relief for violations of federal law against Manning in his official capacity and granted to the extent LeBeouf seeks money damages from Manning in his official capacity and for any relief sought from Manning in his official capacity for violations of state law.

### 7. Jurisdiction

Manning also contends that to the extent LeBeouf maintains any state-law claims related to her employment with the Hospital, this Court is without jurisdiction because the Louisiana Civil Service Commission is vested with exclusive original jurisdiction over such claims.  LeBeouf does not challenge this assertion and appears to abandon these state-law claims.  Instead, LeBeouf contends that this Court has jurisdiction to hear her claims for federal constitutional and statutory violations.  LeBeouf's contention is correct and is not in dispute.

The Court has already dismissed LeBeouf's state-law claims against Manning in his official capacity as barred by state sovereign immunity.  Therefore, this analysis applies only to LeBeouf's remaining state-law claims, if any, asserted against Manning in his individual capacity.

Article X, § 12 of the Louisiana Constitution grants the State Civil Service Board exclusive original jurisdiction over "removal and disciplinary cases," and the Louisiana Supreme Court has stated that "[t]he Civil Service Commission has the exclusive power and authority to hear and decide all state civil service disciplinary cases."  *AFSCME, Council #17 v. State ex rel. Dep't of Health & Hosps.*, 789 So. 2d 1263, 1268 (La. 2001).  Therefore, any state-law claims against Manning in his individual capacity are subject to the Civil Service Commission's exclusive original jurisdiction, and

the Court is without jurisdiction to hear such claims.[57]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS LeBeouf's motion to strike, and GRANTS IN PART and DENIES IN PART Manning's motion for summary judgment. Specifically, Manning's motion is granted as to: (1) LeBeouf's claims for violations of her right to postdeprivation due process; (2) LeBeouf's claims against Manning in his official capacity for money damages; (3) LeBeouf's claims against Manning in his official capacity for violations of state law; and (4) LeBeouf's state-law claims against Manning in his individual capacity. Manning's motion is denied as to all other claims.

New Orleans, Louisiana, this 11th day of June, 2015.

_Sarah Vance_
_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[57] Manning also asserts that these same claims are barred by principles of res judicata and collateral estoppel, but the Court need not reach these arguments.